# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Dewitt McDonald, Jr., | : | Case No. 3:08 CV 1718 |
| Petitioner, | : | |
| v. | : | **MAGISTRATE'S REPORT** |
| | | **AND RECOMMENDATION** |
| Warden Lebanon Correctional Institution, | : | |
| Respondent. | : | |

This case, filed pursuant to 28 U.S.C. § 2254[1], was referred to the undersigned Magistrate pursuant to

Local Rule 72.2[2].  Pending are:  Petitioner's Petition for Writ of Habeas Corpus (Docket No. 1), Respondent's

Return and Supplemental Memorandum, Petitioner's Traverse, Respondent's Reply and Amicus Curiae filed

by the Southern Christian Leadership Conference (SCLC) (Docket Nos. 5, 11, 55 & 61); Petitioner's Motion

for Order Expanding the Record (Docket No. 52); Respondent's Opposition (Docket No. 60) and Petitioner's

---

[1]

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254 (Thomson/West 2007).

[2]

**Rule 72.2 Assignment and Referral of Matters to Magistrate Judges**

**(a) General.**  The method for assignment of duties to a Magistrate Judge and for the allocation of duties among the several Magistrate Judges of this Court shall be made in accordance with orders of the Court or by special designation of a District Judge.

unopposed Motion for Leave to File the Traverse *Instanter* (Docket No. 57).  For the reasons that follow, the Magistrate recommends that the Court order a conditional grant of habeas relief, deny as moot the Motion for Order Expanding the Record and deny as moot the Motion for Leave to file the Traverse *Instanter*.

## I.  FACTUAL BACKGROUND

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment in state court, the factual findings made by a state court in the direct appeal are presumed to be correct.  *Keith v. Mitchell*, 455 F. 3d 662, 666 (6th Cir. 2006) (*citing* 28 U. S. C. § 2254 (e) (1) (2006)).

In *State of Ohio v. DeWitt McDonald*, the Court of Appeals for the Eighth District made the following statement of facts.

On the evening of January 5, 1994, Petitioner and companions Shawn Caston and Daryl Turner were drinking at Whitlee's Bar in Sandusky, Ohio.  While at the bar, Caston became involved in an argument with Jerome Caffey.  At the conclusion of this dispute, Caffey left Whitlee's and Caston rejoined Petitioner and Turner.  The next morning at approximately 3:00 a.m., Caffey was in the house he shared with Anna Hunt, his aunt.  With Caffey was an acquaintance, Sharon McGill.  Caffey's aunt also had guests.  Tammy Johnson, her sister Vivian Johnson, and Laurie Henry were returning from a graduation party for Vivian's daughter when Tammy and Laurie decided to stop at Anna Hunt's.  Tired, Vivian Johnson remained in the car while the other two went inside.  As Tammy and Laurie prepared to leave the house, it was sprayed with multiple gun shots.

In the house, a bullet struck Sharon McGill. Another bullet shattered the window of the car in which Vivian Johnson was sitting and struck her in the neck.  The bullet which struck Sharon McGill lodged in her abdomen, but she survived.  Vivian Johnson died two days later as a result of her wound.

Police investigators searched the scene and found twelve spent nine millimeter shell casings of a type compatible with those used in an Intertech nine millimeter semiautomatic weapon.  In an initial interview with police, a neighbor across the street stated that he had heard, but not seen, the shooting.  He described hearing a four cylinder car with a loud muffler.

Police attention quickly focused on Petitioner, Caston and Turner.  Witnesses described the dispute between Caston and Caffey at Whitlee's Bar.  One witness at the bar reported over-hearing a conversation the trio had after the dispute occurred.  The witness relayed that Petitioner told Caston, with reference to Caffey, that "he wouldn't waste his time on one of them.  He'd cap one of them."  Petitioner, Caston and Turner were also seen together just a few minutes before the shooting in a car at a Shell station a short distance from Caffey's house.

On June 6, 1994, late in the afternoon, police first interviewed Petitioner.  Petitioner denied making any statement to Caston to "cap" anyone.  When asked of his whereabouts at the time of the shooting, Petitioner said he had spent the

2

night with Daryl Turner at Turner's girlfriend's house. When Turner's girlfriend failed to substantiate this alibi, Petitioner said he had lied to keep secret an extra marital affair he was having with Krista Harris. According to Petitioner, he had spent the night with Harris in a motel.

Harris initially supported Petitioner's story and went so far as to provide him with an alibi when she testified before a grand jury. Later though, Harris changed her testimony. During Petitioner's trial, Harris stated that Petitioner was supposed to meet her in a motel room a few blocks from the shooting scene, but he did not show up until sometime after 3:15 a.m. When he did arrive, according to Harris, he appeared nervous and shaken. Harris also testified that the next morning she overheard a telephone conversation between Petitioner and Turner in which the shooting was discussed and Petitioner stated that they "had to get the gun." Petitioner left and returned with Turner a short time later; Turner was carrying a duffle bag.

Petitioner and Turner then went to Columbus, Ohio, where they stayed for the next week. In her trial testimony, Harris reported receiving numerous telephone calls from Petitioner during this period. Petitioner advised Harris during the phone calls, "*** not to talk to police, [and] that I was going to be his alibi so he wouldn't go to jail ***." Over Petitioner's objection, Harris also testified that during one of her telephone conversations with Petitioner he gave the phone to Turner. Turner, according to Harris, warned her that she was too involved to talk to the police. He also told Harris that he had provided Shawn Caston with the gun, "*** [t]o take Jerome Caffey out," and that he and Petitioner then, "*** got rid of it."

During the course of the investigation another witness changed his story. The neighbor from across the street who previously only reported hearing the shooting now admitted he had seen the shooting, but concealed the information from investigators out of fear of becoming involved. The neighbor told police and later testified that he had seen three black males in a compact car with a loud muffler shoot into the Caffey/Hunt house. He also noted that during the shooting he saw one of the occupants of the car pass the gun to a front seat passenger who shot it while holding it over the windshield.

The neighbor's observation of the gun being fired over the windshield became important because when investigators examined the car owned by Shawn Caston's girlfriend, a compact car without a muffler, they found another nine millimeter shell casing lodged in the well between the windshield wiper and the hood. Experts determined that the firing markings on this shell matched those of the twelve casings found at the shooting scene.

In addition to this evidence, Daryl Turner admitted to police that he owned an Intertech nine millimeter pistol, but the weapon was never found.

*State v. McDonald,* 1997 WL 51221, *1-2 (1997) (unreported).

## II.  PROCEDURAL BACKGROUND

A.    *Indictment*

On or about August 29, 1994, the jurors of the grand jury for the State of Ohio, Erie County, Ohio,

rendered the following indictment:

| Count One: | Petitioner, with prior calculation and design, caused the death of Vivian Johnson, in violation of OHIO REV. CODE § 2903.01. |

| | |
|---|---|
| Count Two: | Petitioner did purposely cause the death of Vivian Johnson in violation of OHIO REV. CODE § 2903.02. |
| Count Three: | Petitioner discharged a firearm at or into an occupied structure that is the permanent or temporary habitation of any individual, in violation of OHIO REV. CODE § 2923.161. |
| Count Four: | Petitioner knowingly caused physical harm to Sharon McGill by means of a deadly weapon, in violation of OHIO REV. CODE § 2903.11(A)(2). |
| Count Five: | Petitioner did purposely and with prior calculation and design, cause the death of Jerome Caffey, in violation of OHIO REV. CODE § 2903.01(A). |
| Count Six: | Petitioner did knowingly attempt to cause physical harm to Jerome Caffey by means of deadly force, in violation of OHIO REV. CODE § 2903.11(A)(2). |

There were two specifications as to all counts of the indictment:

| | |
|---|---|
| One: | Petitioner had previously been convicted of aggravated menacing. |
| Two: | Petitioner had a firearm on his person or under his control while committing these offenses. |

There was one specification as to Counts One and Two of the Indictment: Petitioner caused physical harm to Vivian Johnson with a deadly weapon.

There was one specification as to Counts Three and Four of the Indictment: Petitioner caused physical harm to Sharon McGill with a deadly weapon.

(Docket No. 5, Exhibit 1).

*2. Adjudication and Sentencing*

A jury found Petitioner guilty of all counts (Docket No. 5, Exhibit 2). On June 20, 1995, the court ordered that Petitioner be imprisoned and confined for a definite term of life with no eligibility of parole for twenty years and three years actual incarceration for the firearm specification.

For purposes of sentencing, Counts One and Two were merged. Petitioner was sentenced for a term of life in prison with no eligibility of parole for twenty years and three years actual incarceration.

As to Count Three, Petitioner was ordered imprisoned and confined to an indeterminate sentence for a term of not less than four years, nor more than ten years and three years actual incarceration as to the firearm

4

specification.

As to Count Four, Petitioner was ordered imprisoned and confined for an indeterminate sentence for a term of not less than six years, nor more than fifteen years and three years actual incarceration as to the firearm specification.

As to Count Five, Petitioner was ordered imprisoned and confined for an indeterminate sentence for the term of not less than ten years, nor more than twenty-five years and three years actual incarceration as to the firearm specification.

As to Count Six, Petitioner was ordered imprisoned and confined for an indeterminate sentence of not less than six years, nor more than fifteen years; and three years actual incarceration as to the firearm specification.

The sentences in Counts One and Two, Four and Five were to run consecutively to each other. The sentences imposed in Counts Three and Six were to be served concurrently with each other and concurrently to Counts One, Two, Four and Five.

The firearm specifications shall merge and run concurrent with each other and the three years actual incarceration shall be served prior to and run consecutive to sentences imposed in Counts One, Two, Four and Five, subject to 204 days of credit.

(Docket No. 5, Exhibit 2).

3.    *Appeals.*

Petitioner filed a brief in the Court of Appeals, Erie County, Ohio, Sixth Appellate District, on April 25, 1996[3] (Docket No. 5, Exhibit 3). On February 10, 1997, the court of appeals affirmed the conviction and

---

[3]

Five assignments of error were presented to the Court of Appeals, Erie County:

1.    The court erred to Petitioner's prejudice by permitting Krista Harris to testify about Daryl Turner's confession.
2.    The court erred to Petitioner's prejudice by permitting Krista Harris to testify as to an implied threat.

overruled all of Petitioner's assignments of error(Docket No. 5, Exhibit 6).  Petitioner filed a memorandum

in support of jurisdiction in the Ohio Supreme Court on March 24, 1997[4] (Docket No. 5, Exhibit 7).  On May

28, 1997, the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal (Docket No.

5, Exhibit 9).

*5.     Post Conviction Relief*

1.  Petitioner moved to reopen his direct appeal on May 7, 1997[5] (Docket No. 5, Exhibits 10 & 11).

The Court of Appeals denied Petitioner's application to reopen on June 10, 1997 (Docket No. 5, Exhibit 13).

2.  Petitioner filed a petition for writ of habeas corpus in this Court on May 28, 1998[6] (Docket No. 5,

Exhibit 14).  United States District Court Judge John W. Potter denied the petition on May 18, 1999 (Docket

---

3.      The court erred to Petitioner's prejudice when it imposed the burden on him to prove that the implied threat was not shown to be connected to him.

4.      The court erred to Petitioner's prejudice when it refused to grant a mistrial or, alternately, strike Terry McDonald's testimony.

5.      Petitioner's conviction was against the manifest weight of the evidence.

[4]

Two grounds for relief were presented.  First, when a prosecution witness is permitted to testify regarding alleged statements of a co-defendant admitting the offense, the accused is denied the right to confrontation and a fair trial.  Second, when the same prosecutor calls a witness a liar in a separate trial of the co-defendant, and then calls the same witness to testify in favor of the prosecution in  the trial of the accused, the trial court errs in denying a mistrial.

[5]

Five grounds for relief were presented.  First, plain error occurred when the trial court failed to properly swear in the jury upon completion of voir dire.  Second, the accused did not receive a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution when the principal witness testified that the police had the accused take a polygraph test.  Third, plain error occurred when the trial court failed to give proper instruction on complicity and the jury instructions did not include the mandatory element of purpose.  Fourth, the accused did not receive a fair trial consistent with the Sixth and Fourteenth Amendments to the United States Constitution when a pattern of prosecutorial misconduct occurred during the trial.  Fifth, the accused received ineffective assistance of trial counsel under the Sixth and Fourteenth Amendments to the United States Constitution.

[6]

Petitioner presented six grounds for relief.  First, due process and a fair trial were denied when a principal witness for the state testified that the police had given the accused a polygraph test.  Second, the due process violation occurred when the court failed to give proper instruction to the jury on complicity.  Third, the accused did not receive a fair trial consistent with the Sixth and Fourteenth Amendments to the United States Constitution.  Fourth, the accused did not have the benefit of effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution.  Fifth, the accused was denied the right to confrontation and to a fair trial.  Sixth, it was constitutional error for the prosecutor to refer to the witness as a liar in a separate trial and then vouch for the credibility of that witness during his trial.

No. 5, Exhibit 15).  The United States Court of Appeals for the Sixth Circuit denied Petitioner's application for appealability on February 1, 2000 (Docket No. 5, Exhibit 16[7]).

3.  On May 1, 2003, Petitioner filed in the court of common pleas, a petition for post conviction relief, a motion for leave to seek a new trial[8] and a motion to hold OHIO REV. CODE § 2953.23 unconstitutional (Docket No. 5, Exhibits 35, 36 and 37).  Respondent filed a motion for summary judgment and dismissal of Petitioner's petition to vacate his sentence on July 3, 2003 (Docket No. 5, Exhibit 38).  On January 2, 2004, the trial judge (1) granted the motion for summary judgment and dismissed the petition to vacate his sentence, (2) denied the motion to find Section 2953.23 unconstitutional on January 2, 2004 and (3) denied Petitioners request for a new trial (Docket No. 5, Exhibit Nos. 47, 48 & 49).  Petitioner perfected an appeal from the Court of Common Pleas's judgment and final order denying Petitioner's motion for a new trial[9] (Docket No. 5, Exhibit 50).  On February 25, 2005, the Court of Appeals denied the motion for leave to seek a new trial (Docket No. 5, Exhibit 53).  Petitioner filed a motion for reconsideration on March 3, 2005 (Docket no. 5, Exhibit 54).  The Court of Appeals denied the motion for reconsideration on March 27, 2005 (Docket No. 5, Exhibit 56).  The Supreme Court of Oho declined to accept jurisdiction on July 13, 2005[10] (Docket No. 5,

---

[7]  Exhibits 17 through 34 are representations of pleadings and orders filed in a case captioned *State of Ohio v. Krista Harris*.

[8]  In the motion for a new trial, Petitioner argued that pursuant to CRIM. R. 33(A)(1), he was entitled to a new trial due to irregularities in the first trial, prosecutorial misconduct and newly discovered evidence.

[9]  Petitioner asserted three arguments.  First, he was denied due process of law when the trial court dismissed his post-conviction petition and motion for a new trial based on retroactive application of the statute.  Second, he was denied due process when the trial court would not consider the merits of his post-conviction petition.  Third, he was denied due process when his petition for post-conviction relief and motion for a new trial were denied on procedural grounds as he established actual innocence (Docket No. 5, Exhibit 51).

[10]  Petitioner asserted three propositions of law.  First, the retroactive application of the post-conviction relief statute, OHIO REV. CODE § 2953.21, to a case in which a sentence was imposed prior to the effective date of the Act violated the due process clause.  Second, the court improperly found that it lacked jurisdiction because Petitioner filed an untimely petition for post-conviction remedy.  Third, the motion for a new trial was improperly denied and there was clear and convincing evidence that he was prevented from

Exhibit 60).

4.  On October 28, 2005, Petitioner filed a motion for leave to seek a new trial in the common pleas court (Docket No. 5, Exhibit 61).  The motion was overruled on February 3, 2006, by the trial court (Docket No. 5, Exhibit 62).  Petitioner appealed this ruling on February 17, 2006, in the court of appeals[11] (Docket No. 5, Exhibit 63).  On May 4, 2007, the court of appeals affirmed the trial court's motion overruling Petitioner's request for a new trial (Docket No. 5, Exhibit 66).

5.  On August 17, 2006, Petitioner filed a motion under Section 2244 for an order authorizing the district court to consider a second or successive application for relief under 28 U. S. C. § 2254 in the United States Court of Appeals for the Sixth Circuit (Docket No. 5, Exhibit 67 and Exhibit 78, p. 242/296).  On January 10, 2008, the United States Court of Appeals entered an order authorizing the filing of a second or successive application for habeas corpus (Docket No. 5, Exhibit 69).

6.  On July 18, 2008, Petitioner filed a Petition for Writ of Habeas Corpus in this Court[12].

### III.  JURISDICTION

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the constitution or laws or treaties of the United States.  *Leslie v. Randle*, 296 F.3d 518, 521 (6th Cir. 2002) (*citing* 28 U.S.C. § 2254 (Thomson/West 2002)).

_____

discovering the evidence that would alter the trial results.

[11]  Petitioner asserted a sole assignment of error:  the trial court erred in ruling that Petitioner was not unavoidably prevented from obtaining evidence required for a new trial and has failed to meet the rudimentary standard for leave to file a motion for a new trial (Docket No. 5, Exhibit 64).

[12]  Petitioner asserts three grounds.  Ground one, the knowing use of perjured testimony is in violation of the Due Process Clause of the Fourteenth Amendment.  Ground two, failure to disclose information that could be used to impeach inculpatory testimony is in violation of the Due Process Clause of the Fourteenth Amendment.  Ground three, the denial of the right to present witnesses in one's own defense is a violation of the Due Process Clause of the Fourteenth Amendment.

Petitioner satisfies both prongs of the requirements for habeas jurisdiction.  He was convicted in the Erie County Court of Common Pleas on five counts of complicity.  He is presently confined in the Lebanon Correctional Institution as a result of his conviction (Docket No. 1).  Petitioner is in custody for purposes of habeas jurisdiction.

Petitioner articulated that he has been deprived of rights guaranteed him under the Sixth and Fourteenth Amendments.  Such claims, if true, are phrased sufficiently to allege a denial of violation of the constitution or laws or treaties of the United States.

The Magistrate finds that this Court has subject matter jurisdiction to consider Petitioner's Petition for Writ of Habeas Corpus.

## IV.  HABEAS CORPUS STANDARD

In determining whether to issue a habeas writ, the standards set forth in the AEDPA govern the district court's review of a state court decision.  *French v. Jones,* 332 F.3d 430, 435-436 (6th Cir. 2003), *cert. denied,* 124 S. Ct. 581 (2003).  The AEDPA only provides habeas relief for a state prisoner in certain circumstances. *Id.*  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Id.* (*citing* 28 U.S.C. § 2254(d) (2001)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Id.*  Under the

"unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

## V.  PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING

Petitioner submits that several factual disputes are pending; therefore, an evidentiary hearing to develop the factual record that was not developed in state court and to address the merits of Respondent's procedural defenses is warranted.  The SCLC is also a proponent of an evidentiary hearing to develop facts that were not developed in state court.

A habeas petitioner has a limited right to an evidentiary hearing.  *Parsons v. Money,* 2007 WL 649283, *9 (N. D. Ohio 2007).  In fact, a district court need not conduct an evidentiary hearing "unless one of the eight circumstances listed in [former] 28 U.S.C. § 2254(d) is present." *Beuke v. Houk,* 537 F.3d 618, 655 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2792 (*citing McMillan v. Barksdale,* 823 F.2d 981, 983 (6th Cir. 1987) (*citing Loveday v. Davis,* 697 F.2d 135 (6th Cir. 1983)).  These circumstances include:  (1) when a factual dispute is not resolved in state court; (2) when the state court's factfinding procedure is inadequate to afford a full and fair hearing; (3) when material facts are not adequately developed in state court; (4) when the state court lacks jurisdiction; (5) when the state court fails to appoint counsel; (6) when the petitioner does not receive an adequate hearing in state court; (7) when the petitioner is denied due process in state court; and (8) when the district court determines that a material fact determination is not fairly supported by the record.  *Id.* (*citing* 28 U.S.C. § 2254(d) (1994)).   "These circumstances must be shown by the petitioner, admitted by the State, or 'otherwise appear' from the record."  *Id.* (*citing McMillan, supra*, 823 F.2d at 984).

In deciding whether to grant an evidentiary hearing on the facts of Respondent's procedural defense, consideration has been given to whether to hold a hearing under Rule 8 of the RULES GOVERNING SECTION 2254 PROCEEDINGS and whether one of the eight circumstances delineated in *Beuke* is present.  The Magistrate

10

is not persuaded that a hearing would be meaningful or that it would have the potential to advance facts known by Petitioner and Petitioner's counsel. Petitioner and Respondent have adequately presented their claims on the propriety of equitable tolling as well as whether Petitioner was diligent in discovering that the witness, Krista Harris, recanted prior testimony. The Court can determine if the state court had jurisdiction, whether Petitioner was afforded a fair and full hearing and what material facts, if any, were not adequately developed in state court from review of the record. No additional factual inquiry is required to address issues that can be resolved based on the pleadings, deposition and affidavits.

## VI.  ANALYSIS

**1.   MOTION TO EXPAND THE RECORD (DOCKET NO. 52).**

Petitioner seeks leave of Court to file records and documents as part of the record with document numbers. The Magistrate finds that such filing would be redundant since the documents are already in the record. The Motion to Expand the Record is denied as moot.

**2.   MOTION FOR LEAVE TO FILE THE TRAVERSE *INSTANTER* (DOCKET NO. 57).**

Petitioner seeks leave of Court to file a Traverse. This Motion, too, is denied as moot since the Traverse has been filed.

**3.   PETITION FOR WRIT OF HABEAS CORPUS (DOCKET NO. 1).**

In the answer to the Writ, Respondent presents several reasons for dismissing the Petition for Writ of Habeas Corpus in this case. Primarily, Petitioner's habeas petition is time barred. Alternately, Petitioner's claims are not subject to equitable or statutory tolling. Petitioner has not demonstrated due diligence in discovering the factual predicate of his claim. Finally, Petitioner's claims are procedurally defaulted.

Petitioner suggests that this Court excuse the procedurally defaulted claims, if any, as he is actually innocent. Additionally, he claims that he was not required to exhaust claims bought in a second or successive petition. Petitioner requests that the Court conduct an evidentiary hearing to establish the facts underlying

Respondent's procedural defense and resolve significant factual disputes.

### A.    THE STATUTE OF LIMITATIONS.

The United States Court of Appeals for the Sixth Circuit granted Petitioner leave to file this successive or second petition under Section 2244(b) on the basis that the factual predicate for Petitioner's claim could not have been discovered previously through the exercise of due diligence. *In re McDonald*, 514 F. 3d 539, 542-544 (6th Cir. 2008). The one-year period of limitations begins to run on the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. *Steward v. Moore,* 555 F. Supp.2d 858, 868 (N. D. Ohio 2008) (*citing* 28 U.S.C. § 2244(d)(1)(D)). The district court is responsible for determining when a duly diligent person in petitioner's circumstances would have discovered his or her right to an appeal. *Id.* (*citing DiCenzi v. Rose,* 452 F.3d 465, 470 (6th Cir. 2006) (*quoting Wims v. United States,* 225 F.3d 186, 190 n. 4 (2d Cir.2000) (brackets in original)). The question of due diligence is fact-specific and depends on various considerations, including the petitioner's post-conviction conversations with his or her lawyer and the conditions of his or her confinement after sentencing. *Id.* (*citing DiCenzi, supra*, 452 F. 3d at 471). The petitioner bears the burden of proving that he or she exercised due diligence, in order for the statute of limitations to begin running from the date he or she discovered the factual predicate of his or her claim pursuant to 28 U.S.C. § 2244(d)(1)(D). *Id.* (*citing Lott v. Coyle,* 261 F.3d 594, 605-606 (6th Cir. 2001) *cert. denied*, 122 S. Ct. 1106 (2002)).

Here, the factual predicate underlying the proffered constitutional error is the affidavit of Krista Harris dated December 21, 2001. Even using reasonable due diligence, the factual predicate could not have been discovered previously as the affidavit was executed approximately six years after Petitioner's conviction and it surfaced during an unrelated disciplinary hearing for Krista Harris' counsel conducted in January/February 2002. During that hearing, Attorney Espy discovered that Krista Harris had averred that her adverse trial testimony was perjured. He commented in an article published in the COLUMBUS DISPATCH on February 1,

2002, that he **might** seek a new trial for Petitioner if he could verify some statements (Docket No. 5, Exhibit 24).  It is definitive that Petitioner knew or should have discovered the factual predicate of his claim when Attorney Espy undertook Petitioner's representation on August 1, 2002 (Docket No. 55, Exhibit 5, p. 52/102). The statute of limitations expired on August 1, 2003.  However, on May 1, 2003, Petitioner filed a request for a post-conviction relief based on the Krista Harris affidavit, other declarations and a polygraph examination report (Docket No. 5, Exhibit 67, pp. 103/296-108/296, Exhibit B, Exhibit D, p. 114/296).  Petitioner did not file a Petition in this Court until July 18, 2008.  Unless Petitioner can satisfy the requirements of statutory or equitable tolling, he filed to comply with the statute of limitations.

### B.    STATUTORY TOLLING OF THE STATUTE OF LIMITATIONS.

The federal statute governing petitions for the writ prescribe that the petition for writ of habeas corpus must be filed within one year of the date on which the factual predicate of the claim or claims presented could have been discovered.  28 U. C. S. § 2244 (d)(1)(D) (Thomson Reuters 2009).  The statute further provides that the one year limitation period may be tolled by the time a properly filed application for post-conviction relief is pending in state courts.  *Graham v. Bagley*, 2009 WL 983007, *6 (N. D. Ohio 2009).  In computing the limitations period, the statute is tolled while an application for state post-conviction or other collateral review is pending.  *Lawrence v. Florida*, 127 S. Ct. 1079, 1082-1083 (2007).

Calculating the statute of limitations from the date that Petitioner was certainly aware of the factual predicate, the statue commenced on August 1, 2002, and was tolled beginning May 1, 2003, through July 13, 2005, during the pendency of Petitioner's request for post-conviction relief.  The statute expired approximately 14 days prior to the filing of the request for a new trial filed on October 28, 2005.  Unless Petitioner can satisfy the requirements of equitable tolling, his claims are barred under principles of statutory tolling.

### C.    EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS.

The federal habeas corpus statute imposes a statute of limitations that is subject to equitable tolling.

13

*Chavez v. Carranza*, 559 F. 3d 486, 493 (6th Cir. 2009).  Equitable tolling is proper only in situations where the administration of justice is precluded, making the rigid application of a limitation period unfair.  *Id.*  Failure to file a habeas petition within the period prescribed by § 2244(d)(1)(A)-(D) is not jurisdictional; therefore, the period is subject to equitable tolling.  *Baker v. Wilson*, 2009 WL 313325, \*12 (N. D. Ohio 2009) (*See Allen v. Yukins,* 366 F.3d 396, 401 (6th Cir. 2004) *cert. denied*, 125 S.Ct. 200 (2004)).  To benefit from equitable tolling, the petitioner must show that he or she has been pursuing his/her rights diligently, and that some extraordinary circumstance stood in his/her way.  *Id.* (*citing Lawrence, supra*, 127 S.Ct. at 1085) (*quoting Pace v. DiGuglielmo,* 125 S.Ct. 1807, 1813 (2005)).  "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Id.* (*citing Graham-Humphreys v. Memphis Brooks Museum of Art, Incorporated,* 209 F.3d 552, 560-561 (6th Cir. 2000)).

The Sixth Circuit Court has found equitable tolling to be appropriate in two circumstances:  (1) when the petitioner makes a credible showing of actual innocence; and (2) under the five-factor test established in *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001) *cert. denied*, 122 S. Ct. 649 (2001); *See Souter v. Jones,* 395 F.3d 577, 602 (6th Cir. 2005).

The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims."  *Souter, supra,* 395 F.3d at 589-590 (*citing Schlup v. Delo,* 115 S. Ct. 851, 861 (1995)).  The threshold inquiry made by the court is whether there exists new facts that raise sufficient doubt about the petitioner's guilt to the extent that they undermine confidence in the result of the trial.  *Id.* at 590 (*citing Schulp*, 115 S. Ct. at 862).

Although the Court counseled that the actual innocence exception should remain rare, to establish

14

actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* (*citing Schulp,* 115 S. Ct. at 864, 867). Actual innocence means factual innocence, not mere legal insufficiency. *Id.* (*citing Bousley v. United States,* 118 S. Ct. 1604, 1611 (1998)). To be credible, such a claim requires petitioner to support his/her allegations of constitutional error with new reliable evidence that was not presented at trial. *Id.* (*citing Schlup,* 115 S. Ct. at 865). Such evidence may be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence. *Id.* (*citing Schlup,* 115 S. Ct. at 865).

Alternately, the five factors in the *Dunlap* test are as follows:

(1)    the petitioner's lack of notice of the filing requirement;
(2)    the petitioner's lack of constructive knowledge of the filing requirement;
(3)    diligence in pursuing one's rights;
(4)    absence of prejudice to the respondent; and
(5)    the petitioner's reasonableness in remaining ignorant of the legal consequences for filing his/her claim.

*Baker, supra*, (*citing Dunlap,* 250 F.3d at 1008) (*citing Andrews v. Orr,* 851 F.2d 146, 152 (6th Cir. 1988)).

All factors in this list are neither relevant in all cases nor necessarily comprehensive. *Id.* (*citing Vroman v. Brigano,* 346 F.3d 598, 605 (6th Cir. 2003)). The Sixth Circuit has also emphasized that "absence of prejudice is a factor to be considered only after a factor that might justify tolling is identified." *Id.* (*citing Vroman*, 346 F. 3d at 605).

Petitioner in this case does not put forth an argument under *Dunlap*. However, Petitioner clears the hurdles of the inquiry required to satisfy the actual innocence exception. Until the discovery of the Krista Harris affidavit, Petitioner had no legally cognizable basis on which to request a new trial or make a credible offering of actual innocence. Once the Krista Harris affidavit surfaced, Attorney Espy diligently proceeded to conduct an investigation, obtaining new reliable evidence that was not presented at trial. Specifically, he obtained a declaration from the polygraph examiner implicating Shawn W. Caston as the shooter, an

15

eyewitness account of Petitioner's whereabouts at the time of the shooting and an affidavit from Edward Jay Baxter, the prosecutor's brother, and notes from an investigation conducted by the Bureau of Criminal Investigations that implicated the prosecutor in coercing Krista Harris to alter her initial grand jury testimony (Docket No. 55, Exhibits A, B, C, D & E).

The Magistrate concludes that the probative force of this evidence that was either excluded or unavailable at Petitioner's trial, raises doubt about Petitioner's guilt and undermines the confidence of the trial. It is unlikely, given this evidence, that a reasonable juror would have found Petitioner guilty **beyond a reasonable doubt** on all of the counts.  After evaluating the evidence offered at trial and the new evidence, the Magistrate finds that Petitioner's failure to meet the deadlines and requirements for filing a timely petition in this Court do not preclude further review.  According, Petitioner's otherwise barred constitutional claims will be considered on the merits provided Petitioner complied with the exhaustion procedures.

### D.     EXHAUSTION OF CLAIMS[13].

Petitioner has readily resorted to several levels of state post-conviction review.  As a result, he contends that he has exhausted all available state court remedies.  Respondent disagrees, arguing that grounds one, two and three are procedurally defaulted and waived for habeas review.

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wright v. Pickaway Correctional Institution* 2009 WL 1850170, *8 (S. D. Ohio 2009) (*Wainwright v. Sykes*, 97 S.Ct. 2497, 2506 (1977)).  If petitioner fails to fairly present his or her claims through the requisite levels of state appellate review to the state's highest court and if no avenue of relief remains open or if it would otherwise be futile for

---

[13]

The Sixth Circuit Court of Appeals instructed the district court that if the application to file a second or successive petition were granted, the district would need to decide whether the claim was exhausted or whether waiver of the exhaustion requirement is warranted. *In re McDonald*, supra, 516 F. 3d at 544 fn. 3 (*citing Hatch v. Oklahoma*, 92 F. 3d 1012, 1016 (10th Cir. 1996) *overruled on other grounds by Daniels v. United States,* 254 F.3d 1180, 1188 (10th Cir. 2001)).

petitioner to continue to pursue his or her claims in the state courts, the claims are subject to dismissal with prejudice as waived.  *Id.* (*citing O'Sullivan v. Boerckel*, 119 S. Ct. 1728, 1733-1734 (1999); *Harris v. Reed*, 109 S. Ct. 1038, 1042 (1989); *McBee v. Grant*, 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989)).

A four-part test is applied to determine if a claim is procedurally defaulted:

(1)  the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule;

(2)  the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and

(4)  if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Id*. at 8-9 (*citing Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (*citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

If, because of a procedural default, a petitioner can no longer present his or her claims to a state court, he or she has waived them unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Id.* (*citing Coleman v. Thompson*, 111 S.Ct. 2546, 2565 (1991); *see also Murray v. Carrier*, 106 S.Ct. 2639, 2644 (1986); *Engle v. Isaac*, 102 S.Ct. 1558, 1572 (1982); *Wainwright, supra,* 97 S.Ct. at 2506).

In this case, Petitioner's third ground for relief–the denial of the right to present witnesses in his own defense–is procedurally defaulted.  Moreover, Petitioner has waived the right to have such issue reviewed by failing to satisfy the prejudice standard for overcoming his procedural default.  Petitioner's counsel declined an opportunity to present witnesses seemingly as part of trial strategy (Docket No. 55, Appendix 5, p. 5 of

17

102).  Petitioner cannot demonstrate that he was denied the right to present witnesses or that the alleged denial of the right to present witnesses probably resulted in the conviction of one who is actually innocent of the crimes charged.

Petitioner persisted, however, in presenting his first and second claims alleging the impropriety of the prosecutor's conduct to the state court directly and on appeal.  The state court found that Petitioner's claims were barred by res judicata.  He presented the same claims to the appellate court.  The appellate court failed to address the particular claims of prosecutorial misconduct reasoning that Petitioner had failed to allege sufficient facts to support a claim that he was unavoidably prevented from supporting the facts alleged in his petition.  In the application for reconsideration, Petitioner attempted to explain that the appellate court had avoided the issue of prosecutorial misconduct.  The Ohio Supreme Court of Ohio did not consider the merits of Petitioner's post conviction petition.

### E.  PROSECUTORIAL MISCONDUCT CLAIM OF FAILURE TO DISCLOSE EXCULPATORY EVIDENCE.

Petitioner argues that the prosecutor engaged in various instances of unconstitutional prosecutorial misconduct.  Specifically, Petitioner claims that the prosecutor failed to disclose that he was conducting an "inappropriate sexual relationship" with Krista Harris and that her testimony was contrived.

Prosecutorial misconduct is cognizable in federal habeas corpus.  *Darden v. Wainwright*, 106 S. Ct. 2464, 2471 (1986).  On habeas review, the standard of review for prosecutorial misconduct is limited to assessing due process.  *Byrd v. Collins,* 209 F.3d 486, 529 (6th Cir. 2000) *cert. denied.* 121 S. Ct. 786 (2001) (*citing Darden*, 106 S. Ct. at 2471 (*quoting Donnelly v. DeChristoforo*, 94 S.Ct. 1868, 1870 (1974)).  The touchstone of this due process analysis on habeas review is the fairness of the trial, not the culpability of the prosecutor.  *Id*. (*citing Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993) *cert. denied*, 114 S. Ct. 1317 (1994) (*quoting Smith v. Phillips*, 102 S. Ct. 940, 947 (1982); *see Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (*quoting Serra*, *supra*, 4 F.3d at 1355)).  Therefore, even if the prosecutor's

18

conduct is universally condemned and undesirable, *Id.* (*citing Darden, supra*, 106 S. Ct. at 2471) (quotation marks and citation omitted), it does not constitute a due process violation unless "the conduct was 'so egregious so as to render the entire trial fundamentally unfair.' " *Id.* (*citing Pritchett*, *supra*, 117 F.3d at 964) (*quoting Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)); *see Darden*, *supra*, 106 S. Ct. at 2471; *Serra*, *supra*, 4 F.3d at 1355; *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982) (en banc)).

A prosecutor has an affirmative duty to disclose evidence favorable to the accused. *Brady v. Maryland,* 83 S. Ct. 1194, 1196 (1963). Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment. *Id.* at 1196-1197.

Here, Petitioner's claims of prosecutorial misconduct, if true, have a direct relationship to the core of the evidence. Petitioner was convicted largely on the unrefuted testimony of Krista Harris that, *inter alia*, Petitioner had manipulated her into providing him with an alibi, that after the shooting she overheard him discussing disposal of the alleged murder weapon and Petitioner and Daryl Turner appeared very nervous and shaken up (Docket No. 55, Exhibit 4, pp. 69/101 - 75/101). The impeachment evidence sought –the purported relationship with the prosecuting attorney and threat of criminal prosecution by the prosecuting attorney-- would impugn Krista Harris's testimony that was so critical to the case. The evidence of a relationship consists of an allegation in Krista Harris' affidavit that during 1994, she had a non-consensual sexual relationship with Kevin Baxter prior to the trial (Docket No. 55, Appendix 5, p. 100/102), an acknowledgment by Kevin Baxter's brother that Kevin Baxter had a sexual relationship with Krista Harris (Docket No. 55, Appendix 5, p. 31/102) and a photocopy of a check drawn on the account of "Kevin J. Baxter, Prosecuting Attorney" for the lease of a U-haul for Krista Harris on September 7, 1995; (Docket No. 55, Appendix 1, p. 59/63).

This evidence demonstrates the existence of a relationship with Krista Harris preceding or during Petitioner's trial. The Magistrate is persuaded, based on the totality of the evidence, that the prosecutor's relationship with Krista Harris was material to Petitioner's conviction. Failure to disclose that relationship

rendered the underlying trial fundamentally unfair.

### F.   PROSECUTORIAL MISCONDUCT CLAIM OF SUBORNING PERJURY.

Petitioner contends that the prosecutor coerced Krista Harris into a nonconsensual sexual relationship and threatened to file criminal charges against her to obtain her testimony against Petitioner.  Consequently, Petitioner alleges that the prosecutor knew that Krista Harris' testimony was fabricated and that the prosecutor suborned perjury by permitting her to testify.

In considering whether to grant Petitioner leave to file a second or successive petition, the Magistrate relies on the Sixth Circuit's considerations in determining whether the alleged conduct might have violated the Due Process Clause.  The Court reasoned that in order to establish a claim of prosecutorial misconduct or denial of due process, the defendant must show that the statement in question was false, that the prosecution knew it was false, that it was material and that it may also have constituted the denial of the defendant's right to present a witness in his or her own defense.  *In re McDonald*, *supra*, 514 F. 3d at 546, fn. 5 (*see United States v. Emuegbunam*, 268 F.3d 377, 400 (6th Cir. 2001) *cert. denied,* 122 S. Ct. 1450 (2002) ("Various prosecutorial and judicial actions aimed at discouraging defense witnesses from testifying to deprive a defendant of this right.")).  A new trial is required if the false testimony could, in any reasonable likelihood, have affected the judgment of the jury.  *Carter v. Mitchell*, 443 F. 3d 517, 535 (6th Cir. 2006) *cert. denied*, 127 S. Ct. 955 (2007) (*citing Giglio v. United States*, 92 S. Ct. 763, 766 (1972) (*quoting Napue v. People of State of Illinois*, 79 S. Ct. 1173, 1178 (1959)).

The Sixth Circuit found that Krista Harris' recanting of her trial testimony "loomed large" specifically since the state did not present any eyewitnesses who saw Petitioner at the scene of the crime-only a witness who saw three individuals in a car from where shots were fired.  *Id*. at 547.  There was no direct evidence linking Petitioner to the underlying crimes.  Krista Harris' testimony was material as it was the only evidence linking Petitioner to the concealment of evidence and consequently the death and injury to the victims.  A

20

reasonable fact finder could conclude that the prosecutor knew that Krista Harris could provide Petitioner with an alibi through the relationship with her.  Krista Harris' testimony, in all likelihood, affected the judgment of the jury.  As a result, Petitioner can establish a prima facie case for denial of his right to due process.

## VII.  CONCLUSION

The Magistrate recommends that the Court (1) order a conditional grant of habeas relief, (2) remand the case to the state court for a new trial and (3) terminate the referral to the Magistrate.

/s/Vernelis K. Armstrong
United States Magistrate Judge


Dated: November 6, 2009

## VIII.  NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.

Please be advised that, pursuant to rule 72.3(b) of the local rules for this district, the parties have ten (10) days after being served in which to file objections to said report and recommendation.  A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the sixth circuit court of appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

21